Argued February 5, reversed April 10, petition for
rehearing denied May 14, 1968

KRAMER, *Respondent, v.* HALEY, PUBLIC
UTILITY COMMISSIONER, *Appellant.*

439 P. 2d 571

See also 250 Or 92, 439 P.2d 573.

*Thomas Y. Higashi,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs were Robert Y. Thornton, Attorney General, Salem, and Richard W. Sabin, Assistant Attorney General and Chief Counsel for Public Utility Commissioner, Salem.

*John W. Whitty,* Coos Bay, argued the cause for respondent. With him on the brief were McKeown, Newhouse & Johansen, Coos Bay, and Eugene E. Laird, Salem.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

O'CONNELL, J.

This is an appeal by the Public Utility Commissioner from a decree of the circuit court for Coos county setting aside two administrative orders cancelling plaintiff's PUC permit.

Plaintiff, Alan H. Kramer, held a PUC permit authorizing him to transport logs, poles and pilings by motor carrier. In 1964 Kramer entered into a business partnership with Jewell Smith. On July 7, 1964, they listed their business with the State Department of Commerce as "log trucking." Previously they filed a notice with the State Industrial Accident Commission that the partnership was engaged in a hazardous occupation and opened an account with the State Department of Employment.

In March of 1964 the Kramer & Smith partnership began purchasing additional vehicles which they registered with the Department of Motor Vehicles as co-owned. Beginning March 9, 1964, Kramer made application from time to time at the Public Utility Com-

missioner's field office in North Bend for permission
to operate under his permit the vehicles purchased by
the partnership. In several of the applications filed
in March and April of 1964 he represented that the
vehicles were owned by him. In subsequent applica-
tions Kramer designated himself as "lessee" of the
partnership and on one of these applications, at the
foot of a list of vehicles, Kramer made a notation that
they were "all on permits already but not shown as
leased equipment. They are leased from Kramer &
Smith by Kramer."

Between March, 1964 and May, 1965, the partner-
ship carried on a log trucking business with the ve-
hicles designated on Kramer's application. In the
course of conducting this business the partnership
kept the account books and records, made deposits,
paid the bills, paid the taxes, handled the payroll, and
did everything else that was necessary in the opera-
tion of the log trucking business.

In May, 1965, after consulting an attorney, Kramer
set up separate accounts so that payrolls and taxes
were paid with checks drawn on Kramer's account
(Alan Kramer Co.) and the proceeds from the truck-
ing operation were deposited to this account. There
was testimony, however, that Smith continued to exer-
cise control over the trucking operation and over the
disbursement of funds.

The Commissioner cancelled plaintiff's permit, the
order of cancellation reciting several grounds, one of
which was the violation of ORS 767.190 (2)(i).

ORS 767.190 (2)(i) provides as follows:

"(i) Has filed with the commissioner an applica-
tion which is false with regard to the ownership,
possession or control of the equipment being used
or the operation being conducted."

In the applications of March 9, March 30, and April 13, 1964, plaintiff in effect represented that he was carrying on the log trucking business as an individual and that he individually was the owner of the equipment. These statements were "false with regard to the ownership, possession  *  *  *  [and] control of the equipment being used" and therefore constituted a violation of ORS 767.190 (2)(i).

Plaintiff argues that the Public Utility Commissioner's office was not misled because subsequent applications contained notations revealing that the partnership was the owner of the trucks and had leased them to plaintiff. This subsequent disclosure did not make the earlier applications any the less false and the Commissioner was entitled to regard the earlier violation as the basis for revoking the permit.

■ Plaintiff further argues that he disclosed to the Commissioner's employee in the North Bend field office the ownership and lease of the trucks and that this notice to the Commissioner's agent constituted notice to the Commissioner himself. This argument would have some force if the field office employee was vested with authority to approve or reject motor carrier applications. But the employee did not have such authority. She performed only the ministerial duties of receiving motor carrier applications and assisting applicants in filling out the application forms. The knowledge of such an employee will not be imputed to the Commissioner.

■■ It is clear from the record that the permit issued to Kramer was in fact used by the Kramer-Smith partnership. Smith exercised a considerable amount of control over the operation of the business. Thus we have a use of the permit by a person whose

qualifications to conduct a motor carrier operation were never passed upon by the Commissioner. One of the principal purposes for the permit system is to make certain that only qualified persons conduct motor carrier operations. The declaration of policy in the Motor Carrier Act states that it is "imperative that * * * [o]peration by irresponsible persons * * * be prevented." ORS 767.020 (2)(f). The application itself emphasizes the importance of full disclosure in requiring the applicant to certify "that there is no person having any interest, directly or indirectly, in the ownership, possession or control of the equipment listed or the operations conducted." Such disclosure was not made by plaintiff in this case. Therefore, the Commissioner acted within the authority vested in him by ORS 767.190 (2)(i) to cancel plaintiff's permit.

It is unnecessary to decide whether the other grounds stated in the Commissioner's order for the cancellation of the permit were sound.

The decree of the trial court is reversed.